UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| ROBERT S. MANCINI, | : | |
| Plaintiff, | : | 23 Civ. _____ (\_\_\_\_) |
| - against - | : | <u>COMPLAINT</u> |
| UBS AG, NEW YORK BRANCH, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Robert S. Mancini, for his complaint against defendant UBS AG, New York Branch, alleges as follows:

**Jurisdiction**

1.  The jurisdiction of this Court over the within action rests upon 28 U.S.C. §1332(a)(2), in that there is complete diversity of citizenship between plaintiff and defendant, and the amount in controversy, exclusive of interest or costs, exceeds the sum or value specified by 28 U.S.C. §1332(a), all as more fully appears below.

**Nature of Action**

2.  This is an action for breach of contract seeking to recover damages for violation of Article 9 of the Uniform Commercial Code, as made applicable in New York State. Damages sought arise from defendant's liquidation of collateral, in the form of securities and cash, for a loan from defendant to plaintiff. Damages represent (a) the surplus that would have been generated for the benefit of plaintiff and (b) the lost value of a discount incurred in liquidating collateral securing a loan to plaintiff, had defendant conducted the liquidation in a commercially reasonable manner. It did not.

**Parties**

3. Plaintiff Robert S. Mancini ("Mancini") is an individual and a citizen of the State of Connecticut.

4. Defendant UBS AG, New York Branch ("UBS New York") is a corporate entity headquartered and conducting a banking business in New York City, New York. It is a wholly-owned and -controlled subsidiary of UBS AG, a banking organization incorporated and domiciled in Switzerland and operating under the Swiss Code of Obligations as an Aktiengesellschaft, a corporation limited by shares.

**Operative Facts**

5. Plaintiff Mancini is an investment professional conducting business principally on his own behalf. Until in or about June 2018 and for a time before that, he was a Managing Director, Global Partner of The Carlyle Group ("Carlyle"), a New York-based private equity firm. In accordance with his position at Carlyle, Mancini was offered the right to participate in certain Carlyle private equity investments. These were known as Carlyle Co-investment Entities or "CIMs".

6. By arrangement between Carlyle and defendant UBS New York, UBS New York offered financing to eligible participants, including managing directors and global partners of Carlyle, in connection with those participants' acquisition of an interest in one or more of the CIMs (the "Carlyle/UBS Arrangement"). The Carlyle/UBS Arrangement enabled such participants to leverage their investments and potentially earn higher returns from profitable business activities of a CIM or from its ultimate sale.

7. In furtherance of the Carlyle/UBS Arrangement, on or about January 8, 2013 Mancini and UBS New York executed a certain master credit agreement, dated as of

September 15, 2011 (the "Master Credit Agreement"), as well as other financing documents. Pursuant to the Master Credit Agreement, UBS New York extended credit to Mancini for his investments in the Carlyle CIMs, and Mancini used such credit for his investments in the CIMs. The credit advanced was secured by the CIMs; UBS New York had custody of the CIMs pursuant to the Master Credit Agreement and, upon information and belief, perfected a security interest in them.

8. The Master Credit Agreement is governed by New York law.

9. Using the leverage afforded him by the Carlyle/UBS Arrangement, Mancini developed a portfolio of CIMs that had a fair market value at the end of 2019 of over approximately $4 million. At the same time, UBS New York had extended credit to him for his investments in the CIMs of approximately $2 million.

10. On June 6, 2018, Mancini ceased to be a Managing Director, Global Partner of Carlyle. Pursuant to the Master Credit Agreement, on his withdrawal from Carlyle he ceased to be an "eligible participant" in the Carlyle/UBS Arrangement. By letter dated February 5, 2019, UBS New York, notified Mancini of the occurrence of a "Final Event," as defined in the Master Credit Agreement, in this case the termination of Mancini's relationship with Carlyle.

11. With the giving of such notice, Mancini was required to repay his indebtedness to UBS New York on its maturity date, which originally had been fixed by his withdrawal as June 6, 2018. Pursuant to applicable provisions of the Uniform Commercial Code, UBS New York had the right to liquidate the collateral to satisfy Mancini's indebtedness. Under that applicable law, should UBS New York have determined to liquidate the collateral, it was required to do so in a "commercially reasonable" manner.

12. By written agreement dated as of February 15, 2019, UBS New York agreed to modify or waive the original maturity date under the Master Credit Agreement and to extend that date to March 1, 2020.

13. In the latter part of 2019 or the early part of 2020, the coronavirus pandemic began to spread among the population of the United States and the world. U.S. and world financial markets suffered an immediate and substantial decline. As an example, between February 19, 2020, and March 23, 2020, the benchmark S&P 500 fell from 3,370.29 to 2,237.40, corresponding to a decline of approximately 33.6%.

14. The markets, however, though they remained volatile, achieved a recovery with record-breaking values. The S&P 500, for example, rebounded to 3,351.28 by August 10, 2020, surpassing its levels in early 2020.

15. The private equity markets were affected by the pandemic and ensuing economic slowdown to varying degrees. The fair market value of Mancini's holdings in the Carlyle CIMs plummeted in March 2020, sustaining a loss of approximately 33% from their year-end 2019 values, but that value too quickly rebounded. The fair market value of Mancini's investment in the CIMs by June 30, 2020, had regained approximately 12% of its value, and by September 30, 2020, had regained approximately 18% of its value, both compared to March 31, 2020 values.

16. In or about March 2020, an executive of defendant UBS New York assured Mancini orally that, in view of the pandemic-related sharp market declines, UBS New York would not liquidate the collateral, in the form of the CIMs and cash, securing Mancini's indebtedness.

17. By written notice dated August 26, 2020, UBS New York gave notice to Mancini of its intention to sell the collateral in a private sale "sometime on or after September 10, 2020."

18. In early September 2020, but before September 10, 2020, Mancini placed a telephone call to defendant UBS New York to discuss purchasing the indebtedness and redeeming the collateral himself. Contrary to the advice he had received in the August 26, 2020 UBS New York notice, he was advised that UBS New York had already initiated the process of liquidating the collateral, and there was no opportunity for Mancini to redeem it.

19. In addition to selling sufficient collateral to satisfy its loan to Mancini, UBS New York also sold the balance of securities in Mancini's account. By reason of that sale, Mancini was deprived of the value of the future appreciation of such securities.

20. Mancini was not afforded any details of the liquidation, including the process followed, the details of marketing that defendant had done to realize the highest and best price in the sale, or the identity of the purchaser or purchasers of the collateral.

21. On October 1, 2020, pursuant to applicable provisions of the Uniform Commercial Code as applicable in New York, Mancini requested a full accounting of the indebtedness and of the sale of the collateral securing it.

22. By letter dated November 20, 2020, defendant UBS New York provided Mancini with what purported to be an accounting of the sale and disposition of the collateral. (A true copy of the November 20, 2020 letter is annexed hereto as Exhibit A.)

23. The "accounting" purported to show that as of October 9, 2020, Mancini was indebted to defendant UBS New York in the amount of $2,017,123.50, that defendant had realized the gross sum of $2,895,229 in the liquidation of the collateral, and that defendant had

taken deductions or expenses of $358,652.33 against the gross proceeds, resulting in net proceeds from the sale of $2,536,576.67.

24. Defendant UBS New York knew and understood that although the fair market value of the collateral had declined steeply in the early phases of the pandemic, its value had begun to recover substantially by August 26, 2020.

25. Mancini accordingly sought to ascertain the basis on which defendant had determined that its sale of the collateral in the private sale effected as of September 10, 2020 had been commercially reasonable.

26. Among other things, UBS New York had used the Carlyle March 31 fair market values (or marks) to market the portfolio. Upon information and belief, the Carlyle June 30 marks were available well before the date of sale and were available by August 26, 2020. Upon information and belief, had defendant deferred the collateral sale to October, the Carlyle September 30 marks also would have been available. Upon information and belief, had its marketing efforts used more current marks, the collateral sale would have generated a higher price. The sale of the collateral closed in October 2020.

27. Additionally, as alleged in paragraph 20 of this complaint, the manner of UBS New York's sale of the collateral resulted in further damages to Mancini and the short period of time between giving notice of the sale and the sale itself deprived Mancini of a reasonable opportunity to "bid in" at the collateral sale to protect his assets.

**CLAIM FOR RELIEF**
**(Breach of Contract – UCC Article 9)**

28. Plaintiff repeats here the allegations of the foregoing paragraphs of this complaint as if fully set forth at length.

29. By reason of the foregoing, defendant UBS New York has breached the Master Credit Agreement and associated contractual documents.

30. Mancini has been damaged by such breach in an amount to be proven herein, but exceeding the sum of $1 million , representing the value of the surplus that would have been realized had defendant liquidated Mancini's security in its possession in a commercially reasonable manner.

31. In selling the collateral, UBS New York afforded Mancini approximately ten (10) days' notice.

32. Such notice was not commercially reasonable in the circumstances presented here.

33. As a result thereof, Mancini incurred damages exceeding defendant UBS New York has breached the Master Credit Agreement and associated contractual documents.

34. Mancini has been damaged by such breach in an amount to be proven herein, but exceeding the sum or value of $1 million, representing the value of the surplus that would have been realized had defendant liquidated Mancini's security in its possession in a commercially reasonable manner.

35. Mancini is entitled to recover such amounts from defendant as damages. Mancini is also entitled to recover from defendant as damages additional losses resulting from the manner of marketing and sale of the collateral.

WHEREFORE, plaintiff demands judgment awarding him as damages the amount of $1 million or such damages as may be proven herein, appropriate prejudgment interest, the costs of this action, and for such other and further relief as the Court may deem just and proper in the circumstances.

Dated: Cornwall-on-Hudson, New York
November 6, 2023

                                        KARLINSKY LLC

                                        By: /s/ Martin E. Karlinsky
                                             Martin E. Karlinsky, Esq.
                                             Bonnie H. Walker, Esq.
                                        103 Mountain Road
                                        Cornwall-on-Hudson, New York 12520
                                        646.437.1430 (Office)
                                        917.623.9102 (Cell)
                                        martin.karlinsky@karlinskyllc.com
                                        bonnie.walker@karlinskyllc.com

                                        *Attorneys for Plaintiff*